Good morning. Kayleigh Moran on behalf of Ervin Osorio. In one of the most important events in Mr. Osorio's life, Mr. Osorio was denied his counsel of choice in violation of the 6th Amendment. I'm going to stay focused on that issue unless the Court has other questions because that is the case dispositive issue in this matter. Mr. Osorio, I think the timeline is important to look at in terms of what did take place in this case. And Mr. Osorio initially made an appearance, I believe the indictment was filed in February, and he made an initial appearance on March 1st, 2013. Mr. Osorio was from the state of Washington and he was arrested in the Eastern District of Washington and then was transported up to Montana. When he was transported to Montana on March 14th, he was appointed counsel in the District of Montana. So on that hearing on March 14th, the Court actually set a motions deadline for two weeks later on March 29th. At that point in time, obviously that's initial appearance, discovery most likely had not been received by counsel, although the record does not contain exactly when discovery was disclosed, but that was a 15-day time period in order to file motions. On that motions deadline did pass, and then about 30 days later, on May 6th, there was a plea deadline date. And at least my understanding of the plea deadline date is that that deadline would be for a plea agreement to be entered. Obviously the defendant can plead guilty at any point in time, so my understanding is that was specifically related to a plea agreement. It's uncontested. So after that, interestingly enough, both had asked for continuances. Those were denied. And then on, I believe, May 3rd and May 6th, both co-defendants entered pleas of guilty in which they also entered cooperation agreements, obviously significantly changing the face of the case. At that point in time on May 6th, Mr. Osorio did request a continuance. That initial request was for specifically him to get a second opinion from an attorney in Eastern Washington by the name of Roger Osorio, a federal defender of the Eastern District of Washington. So the motion to continue the trial was made 10 days before the trial, but the hearing was about a week before trial started, the hearing on the motion to continue. So the first motion was actually a motion for extension of time. To change the plea, right. He just wanted some more time for that. And that's the one where the, that's the May 7th order saying you can have until the end of May 7th. Correct. And then on May 11th was the second motion. But to Judge Wynn's point, on, on, on, or maybe it's your point, but anyway, at that point, even though the motion was titled really seeking to extend that deadline, it gave the court notice that he was looking for a second opinion, right? Correct. It did. And it did specifically spell out who Mr. Piven was, who, that in fact, he was a licensed attorney in Eastern Washington, that he had been the federal public defender, and that a second opinion was being sought in order to determine whether or not Mr. Osorio was interested in pleading guilty. That was the May 6th motion. But at that point, the court didn't have any indication that Mr. Piven was willing to get into the case, did it? Correct. The, the, at that point in time, the May 6th motion was merely, I would put it as a second opinion type motion. Right. To consider additional facts and information. And then, you know, right, and kind of the also entering plea agreements with cooperation agreements attached to them. So then there was that, the May 7th order, which gave that same day to enter the deadline. And the record's not clear on exactly what time of day the order was entered on May 7th, but at some point in the day, it gave till 5 o'clock. May 11th was the next, I think, milestone event because that was the motion to continue. That motion to continue spelled out in far more detail who Mr. Piven was, what his intentions were with the case. And this is where I think there is, you know, a bit of a difficulty because the motion spells out that Mr. Piven would take the case except for the fact that the trial date was, you know, 12 days later. So it was contingent on that continuance, leaving kind of a catch-22 situation later because I think the court made, you know, quite a bit of, you know, the court was basically saying Mr. Piven was not retained. Well, that wasn't exactly correct. Mr. Piven was ready to take the case, but just not 10 days later for trial. Well, let's talk about that because the district court does have considerable latitude in ruling on these sort of motions. And it seemed to me from looking at the transcript of the hearing that the district court was focused on the fact that there's been indications that this attorney had been consulted, but that attorney had not come before the court to indicate a ready willingness to take the case. Is that a reasonable factual finding, do you think? Is it standard practice for counsel to come into court even when counsel had not quite been retained, retained in the sense that here's the payment, I'm in the case? Well, and that was kind of a difficulty. And the record's a little bit devoid there, but I think the difficulty was Mr. Piven, while he was a licensed attorney and ultimately did get pro hoc vicee status, at that point in time, he did not have that pro hoc vicee status to appear in the court. And these hearings were being set in very short order. How long did it take to get pro hoc vicee status? I guess I'm more to the point, at the time Judge Wynn's referring to, at the time of the motion, to continue for this purpose, to substitute counsel. Was there any representation made about how long it would take to get admitted? There was no representation about that. Ultimately, that was a very pro forma process, because the court ultimately did grant the substitution of counsel. That's doing with 2020 hindsight, and I'm just interested in what the court knew at the time, because of course it's an abuse of discretion standards. Right, correct. So at the time, the court really, when Mr. Hoovstall, I believe is the gentleman's name, was attempting to make those representations, the court was very clear to not want to hear information about that unless there was actually a substitution happening. And again, I think that brings us back to that catch-22. The substitution couldn't occur because you'd have an ineffective assistance issue, because Mr. Piven could not possibly be ready in that 10-day time period, yet not making the substitution or not appearing seemed to trouble the court as well. Was the court told that the continuance he would need was quantified at 45 days? Yes, that's correct. That was in the motions as well as stated in the argument. This was the first time the trial date would have been continued. And it was the very first continuance, exactly. And it was, you know, less than, it was about six weeks from Mr. Osorio's initial appearance. Was there any discussion of prejudice to the court or to anybody? Your Honor, there was not any discussion at all about either a burden to the government that witnesses would be unavailable or that the court's schedule would be negatively impacted by this continuance. There was absolutely no discussion as to that, which is why I think Did the government object to the substitution? The government did object to the substitution. They didn't argue any prejudice? Correct. They had six witnesses in their trial, all of whom were either co-defendants or government employees, most of whom were stationed in Montana. With your permission, I'd like to reserve the last two minutes. May it please the Court, I'm Paulette Stewart with the United States Attorney's Office from the District of Montana. I will begin where counsel left off. The Court during the hearing on May 16 does note of the problems of assembling witnesses, lawyers, juries at the same time, same place, and the burden that basically counsels against continuances except for compelling reasons. Did the government oppose the request for continuance in this case? We did, Your Honor, because we were ready for trial. We had deadlines. But why did the government oppose the request for continuance? It doesn't seem like an unreasonable request. The Court set very, very tight deadlines. Here's somebody who advised the Court, well, prior to ten days before trial, even before he filed his motion, that he's seriously considering retaining counsel. The landscape had changed with cooperators now testifying against him. He specifically reached out to a particular counsel who indicated a willingness to take the case. I just don't understand why the government would oppose a reasonable request for continuance under these circumstances. Was there a witness problem that was brought to the Court's attention? No, there were not witness problems. The two cooperators were, I guess actually everyone was out on release status until their changes of plea or until the conviction. What was the government's strongest argument? The government's strongest argument, frankly, is that this Court does keep a very tight schedule and a very tight continuance and a very tight schedule. Remember, case law is clear that just clinging to that schedule for the sake of clinging to that schedule doesn't suffice. So what's the strongest argument? The strongest argument, frankly, is counsel wasn't retained. Counsel was not pro hoc vici and there was no local counsel to comport with the local rules. There was not money that had exchanged hands. At both of the hearings that occurred in this case, on May 13th, there was the loan from the bank that was in process. That was 14 to 30 days out still from occurring. Well, there was an uncle who was ready to front the money immediately for retention of counsel, right? And that was found out on the 16th at the hearing regarding the actual motion to continue the trial that was held where that was the uncle who had appeared and was willing to put up the money. I think that's Judge Winn's point. The Court was informed of that before it ruled, right? It was. It was. But part of, in this timeline, what we have is first on May 6th with the motion, that was a motion for a second opinion for a couple days more. But in the motion it says to review and then either substitute in or continue with appointed counsel. Well, Mr. Piven never substituted in the case at all until August 1st. And so there wasn't a quick substitute in. So by the time we had this ---- sorry. Go ahead, Your Honor. Okay. We're on a tight time schedule. Okay. How many times have you moved for a continuance from this Court? Extension of time, PFRs, whatever you want to file? You get them done right away? We absolutely do. So I'm trying to put myself in the trial situation. I understand the judge has got a busy schedule. I know Montana's got really busy times up there. This was Montana, right? Yes, Your Honor. Yes. And so a change in circumstances, his co-defendants plead or are now becoming co-operators. So he decides he needs to get a second opinion. Okay. So you think two days is too long to get a second opinion? I don't. And actually we did not oppose that request for additional days. Apparently he did that. And then it's my understanding that the motion to continue was because they had a ready, willing, and able counsel identified specifically. And they asked for time for him to clear his calendar or to qualify. I guess he had to take those steps. So how long should that have taken? Well, first he had to be retained, Your Honor. And I guess that's the biggest issue. It had to be what? Retained. Retained. He wasn't actually paid. There wasn't a contract. There were discussions. Well, from Mr. Pevin's perspective, he knew that there was a trial date set. And he had a conflict. His mother passed away. And so he needed to get a continuance in order to be able to come into the case. It's a bit of a catch-22 position. Because from Mr. Pevin's perspective, this defendant had reached out, was interested in retaining him. The family was frantically putting together the funds for that. And the trial date was set on a date that he wasn't available because his mother had passed away. And the request for continuance was very specific, 45 days. So under those circumstances, I don't see why the request was so uncertain or unreasonable such that a denial of a continuance is warranted. Well, and I guess part of the deal is circumstances weren't that drastically different as far as the two co-defendants signing plea agreements on May 3rd and May 6th. So your position is that did not change the landscape for him? You know, it should not have. Because they both had cooperated with law enforcement. Both had provided statements. So no, it was part of the discovery in the case. I mean, there was no surprise that these people had already talked to law enforcement and that plea agreements were at least highly likely in those cases. Because it was already part of discovery that they had fully admitted to their criminal conduct. One of the things that struck me is that I think that government's position in response to the motion was that the defendant should have made the motion months earlier. And I think opposing counsel is right. His first court appearance had only been two months earlier. It's really a tight time frame. It is a tight time schedule. But at the same turn, the opinion from appointed counsel was given almost a month in advance of this sudden desire. It's hard for me to imagine that this defendant didn't think that his co-defendant's changing their plea was a very significant event. But if that's the government's position, I certainly accept it. But putting myself in his shoes, that's pretty tough to believe. But, yes, given the circumstances of the case and the discovery in the case and how it all laid out, you think it wasn't a surprise. Right. Okay. Well, I appreciate the argument. Is there anything further? No, Your Honor. Thank you. When counsel was discovery turned over in this case, was it on the date of arraignment or from time after that? It was prompt. It was right with arraignment. I can go back and check my records. But it was very prompt. The case was ready. The case was indicted. It was all put together. They were, as soon as we had counsel, we were shipping out discovery. There's no So is your representation, then, that as of delivery of that discovery, he should have known that his co-defendants had fully cooperated? Well, you know, at least with the facts of this case, he was tipped off during the course of the investigation that Mr. Hatley had been caught by law enforcement. Well, he knew that they had been caught and basically had fessed up. But it wasn't until May 3rd and May 6th that he found out that they were actually going to flip against him. That they had filed clearances. There would be witnesses in court. Yes, Your Honor. Thank you, counsel. Thank you, Your Honor. Thank you. As the court, I think, has hit on this point, and I want to pick up right where we left off. The fact of the matter is, there's a big difference between knowing that your co-defendant provided a statement upon arrest and finding out that they are, in fact, cooperating against you in trial. I think those are two very different things. In trial work, it's very common for people to make statements upon arrest and then not cooperate later in trial. But this was a situation in which that was a very significant change in the landscape. Because up until May 3rd, nobody, in fact, had pled guilty. And, in fact, the other co-defendants did also request a continuance, which was denied. And it was only then that these plea agreements came forward. But, counsel, co-defendants decide to change their pleas all the time. And we are really reticent to reverse a trial court on this kind of a decision. You know, they have a ton of discretion when it comes to managing their courtrooms. We don't. We're a million miles away from that calendar. And not in a good position to know how much, how disruptive it would have been. What's your strongest argument? I believe that the strongest argument is that the right to counsel of choice, while it's not absolute, is a fundamental, it's rooted in the fundamental Sixth Amendment. I mean, it's not a fairness of trial issue. It's a root fundamental issue. And the fact of the matter is, this wasn't a situation where people were not going to be available, you know, witnesses weren't going to be available. The court had some other situation going on where the court wouldn't be available. Mr. Osorio was, in fact, out of custody and the other co-defendants were as well. So nobody would be affected in terms of being in jail longer or, there was nothing to show that there would be prejudice to anyone by continuing this matter. And in fact, as the courts hit upon, this was an extremely tight deadline. You know, to have two weeks between an initial appearance and motions is, I can't imagine trying to comply with that, quite honestly. And I have been a trial attorney for 15 years. So the idea of trying to get the case organized and together in six or eight weeks is very difficult, I think. Requesting that continuance wasn't unreasonable under the circumstances. And again, there was no showing either by the court or by the government that this would cause some kind of unreasonable delay. Thank you. We are asking for reversal on this matter. Thank you both for your very helpful arguments. We appreciate that. We'll go on to the next case.
judges: Fisher, Christen, Nguyen